IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CLIFTON RULE, CHARLES FLOWERS,                                              PLAINTIFFS
PEARLIE MORRIS, JULIET PROCTOR,
BERTHA SCALES, AND LESSIE A. THOMAS,
AND ALL OTHERS SIMILARLY SITUATED

VS.                                                        CIVIL ACTION NO. 4:04cv200-M-B

REGION VI MENTAL HEALTH-MENTAL
RETARDATION COMMISSION D/B/A
LIFE HELP AND BEACON HARBOR, INC.                                            DEFENDANT

**MEMORANDUM OPINION**

On July 12, 2004, the plaintiffs filed the instant action alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. 201 *et seq*. Particularly, the plaintiffs allege that they were not paid for overtime hours known as "sleep time." The court conducted a bench trial of this matter on January 7, 2008. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court now issues the following findings of fact and conclusions of law.

Region VI Mental Health-Mental Retardation Commission d/b/a Life Help and Beacon Harbor, Inc. is a public, nonprofit provider of mental health services. It is licensed by the Mississippi Department of Mental Health. All plaintiffs, with the exception of Charles Flowers, are former employees of Beacon Harbor, a residential treatment facility managed by Life Help. Charles Flowers is a former employee of East Haven Apartments, an independent living complex managed by Life Help on behalf of the U.S. Department of Housing and Urban Development. All plaintiffs were employed as house parents, and were responsible for the overall care and well-being of the patients at their respective facilities.

1

Clifton Rule, Pearlie Morris, and Bertha Scales worked Monday through Friday, from 4:00 p.m. until 8:00 a.m., and alternate weekends from 8:00 a.m. Saturday until 8:00 a.m. Monday. Pearlie Morris and Bertha Scales were originally hired as part time alternate house parents but later became full time employees. Lessie Thomas and Juliet Proctor were employed as part time alternate house parents. Part time alternate house parents worked every other weekend from 8:00 a.m. Saturday until 8:00 a.m Monday. The hours of 10:00 p.m to 6:00 a.m. were designated as sleep time. Life Help utilized a self-reporting system for work hour documentation and each plaintiff completed a time sheet to be turned in twice a month for payment. The plaintiffs have alleged in their complaint that they were not compensated for their hours of sleep time. The defendant maintains that the plaintiffs understood at the beginning of employment that sleep time hours would be uncompensated.

## ANALYSIS

The Region VI Mental Health-Mental Retardation Commission ("Commission") contends that this action is subject to 29 U.S.C. § 255(a) which states that there is a two year statute of limitations on any action accrued after May 14, 1947 unless the cause of action arises out of a willful violation of the Fair Labor Standards Act ("FLSA"). A willful violation of the FLSA commences a three year statute of limitations after the cause of action accrues. This action was filed on July 12, 2004. The Commission maintains that it relied on a 1988 Wage and Hour Enforcement Policy, (1988 WL 614199 June 30, 1988), and a 1981 Wage and Hour Opinion Letter, WH-505 (1981 WL 179033 February 3, 1981) with respect to its position on sleep time. The plaintiffs provided no testimony or evidence supporting a willful violation of the FLSA.

Accordingly, the two year statute of limitations applies, and the court will not consider any claims accrued before July 12, 2002.

The Labor Department regulation governing compensation for sleep time under the Fair Labor Standards Act ("FLSA") for workers on duty for over twenty-four hours states:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.
>
> If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22(a) and (b).

All plaintiffs worked shifts longer than twenty-four hours. Beacon Harbor and East Haven Apartments provide house parents with an on-site homelike sleeping environment, and the parties acknowledge that Beacon Harbor and East Haven are facilities subject to the aforementioned regulation. The 1981 opinion letter that the Commission asserts it relied on in making its business decisions explains the Department of Labor's policy, stating, "As a general rule, sleep time is compensable unless it falls within either of two exceptions. First, subject to specified conditions, sleep time of up to eight hours need not be considered as working time if the employee is on duty for 24 hours or more. Second, where an employee resides on his employer's premises on a permanent basis or for extended periods of time, any reasonable

3

agreement of the parties as to the amount of hours worked will be accepted . . ." Wage and Hour Opinion Letter (1981 WL 179033 ¶5, ¶6).

The 1988 enforcement policy expands upon the 1981 opinion letter. It states that sleep time is deductible for full-time and relief employees if those employees are provided private quarters in a homelike environment. The policy instructs that a reasonable agreement regarding compensable time must be reached in advance, and that the exclusions must be the result of an employer-employee agreement and not the result of a unilateral decision by the employer. It also suggests that such agreements should normally be in writing to preclude any misunderstanding of the terms and conditions of employment. Both the plaintiffs and the defense have provided very little documentary evidence in support of their positions; therefore, it is incumbent upon this court to rely heavily upon trial testimony and weigh the credibility of witnesses.

East Haven Apartments - Charles Flowers

Charles Flowers was employed by Life Help and worked at East Haven Apartments. His employment records reflect that he was hired on January 4, 1999, and his last day of employment with Life Help was July 31, 2002. This court has previously determined that the two-year statute of limitations is applicable, and the court will accordingly consider Mr. Flowers' claims from July 12, 2002 until July 31, 2002.

Mr. Flowers was originally employed as a maintenance man, and testified that he was later transferred to the position of night manager. Madolyn Smith, the executive director of Life Help, corroborated Mr. Flowers' testimony that he was originally hired as a maintenance man, but contradictorily testified that Mr. Flowers was later transferred to the position of apartment manager rather than to the position of night manager. His employment records designate him as

an apartment manager. Despite the discrepancy in testimony about his job title, both Mr. Flowers' and Ms. Smith's testimony about his job duties were consistent. Mr. Flowers' duties as apartment manager included general maintenance and repair of the apartment complex, cleaning community areas, collecting money from the coin operated machines, dispensing medication to the residents of East Haven, and checking the clients' apartments to ensure that they were being maintained in an acceptable condition. Clients could contact him or the case manager with a problem if it arose during the night, but he was free to leave the premises at will during sleep time hours as long as he was back in the morning.

Mr. Flowers worked from 6 p.m until 7 a.m. The hours of midnight through 6 a.m were considered sleep time and Mr. Flowers was not paid for those hours. He stated that he understood the terms of employment regarding sleep time when he began work, although he did not sign any written document expressly acknowledging non-payment of sleep time hours.

Under 29 C.F.R. § 785.22(a), sleep time agreements can be express or implied. As the 1998 enforcement policy suggests, a written sleep agreement removes the likelihood that confusion about an employment agreement will result. In this case, however, Mr. Flowers' own testimony that the sleep time policy was explained to him and he understood that he would not be paid for sleep time when he accepted the position of apartment manager. Another factor supporting Life Help's assertion that sleep time would not be compensated is Mr. Flowers' testimony that he was permitted to leave the apartment complex during sleeping hours. Further, there was extensive testimony during trial about night duty reports. Every witness, both plaintiff and defense, testified that night duty reports were available to house parents to fill out and turn in when sleep was interrupted. Any hours worked could be documented on the night duty report

and the hours would be compensated. The existence of a night duty report creates an inference that sleep time is not compensable unless sleep is disturbed. Mr. Flowers never complained or filed a grievance about his pay prior to the institution of this suit and admits that he usually did not bother to complete a night duty report because most disturbances did not take long. He did state that he completed one night duty report claiming hours worked when he had to transport a patient to the hospital. Since the hours worked by Mr. Flowers were self-reported, there are no other time keeping records to assist in the computation of hours for which Mr. Flowers worked but was not paid.

While this court acknowledges that it is a much more judicious practice to memorialize such agreements in writing rather than to rely on oral communication, this court is compelled to find that Mr. Flowers entered into his employment with full and complete understanding of his payment terms. Mr. Flowers has been unable to demonstrate that Life Help refused to compensate him for hours rightfully claimed and submitted; therefore, judgment must be entered in favor of the defendant as to Mr. Flowers' claim.

<u>Beacon Harbor</u>

Pearlie Morris and Clifton Rule received written documentation defining sleep time hours. While the letter did not expressly state that sleep time would not be compensated, it clearly delineated sleep time hours. Both Ms. Morris and Mr. Rule testified in direct examination that they understood they would not be paid for sleep time. They both further testified that they had been instructed to turn in a night duty report anytime they had to care for a client during sleep time.

Ms. Morris stated that she was up quite often during the night caring for patients, but did not turn in a night duty report because it did not seem important to report fifteen or twenty minutes of time. She did understand that if she had taken the time to turn in the night duty report the documented time would be compensated. Clifton Rule stated that he completed one or two night duty reports but stopped after he was questioned by his supervisor, Vicki Webb, about the exact amount of time he spent with the clients. He believed that if he took care of a client for fifteen minutes, then he should be credited for one or two hours because it would take him that amount of time to get back to sleep. To the contrary, Ms. Webb believed he should only be compensated for the time spent caring for the client. On cross examination Mr. Rule stated that he was compensated for the hours he turned in.

Like Mr. Flowers, the remaining plaintiffs did not receive written documentation addressing sleep time. Juliet Proctor testified on direct examination that she knew what the sleep time hours were, but that she was never told she would not be paid for those hours and never agreed with those hours being uncompensated. Ms. Proctor also stated that she was aware of the existence of the night duty reports, but never completed one nor turned one in when her sleep was disturbed. On cross examination, Ms. Proctor acknowledged that is was clear when she started her employment that she would be paid for thirty-two hours each weekend even though she was actually on duty for forty-eight hours. She also acknowledged that she was paid for all time that she turned in on her time card and that she knew the purpose of a night duty report but never completed one.

Similarly, Bertha Scales testified on direct examination that she knew what hours had been designated as sleep time, but never agreed to forego compensation for those hours. She also

testified that she never turned in a night duty report for sleep interruptions because she would only be up for twenty or thirty minutes at a time. On cross examination she admitted that she clearly understood she would be paid for thirty-two hours of work when on duty for forty-eight hours because sleep time would be deducted from the calculation of her hours worked.

Lessie Thomas testified on direct examination that she knew the hours from 10 p.m. to 6 a.m. constituted sleep time. She stated that should would have check on clients periodically and was awake roughly forty-five percent of the time with clients. She was familiar with the night duty report. Like Ms. Scales, Ms. Thomas did not complete night duty reports because she would only be up for ten or fifteen minutes at a time. On cross examination she acknowledged that Ms. Webb talked to her about her pay arrangement when she was hired and that she understood she would be paid for thirty-two of forty-eight hours.

All of the Beacon Harbor plaintiffs' testimony corroborated the testimony of Life Help's witnesses. Further, Life Help's witnesses remained consistent upon cross examination. Elizabeth Powers, now a board member of Beacon Harbor, hired Ms. Morris, Mr. Rule, and Ms. Scales. Vicki Webb, resident manager of the Beacon Harbor group homes, hired Juliet Proctor and Lessie Thomas. Ms. Powers confirms that she informed each of the plaintiffs about sleep time hours during employee orientation, and told them that they would not be paid for those hours unless they documented that they were up with a client. They were instructed to complete a night duty report for time worked during the designated sleep hours. Ms. Webb similarly testified that neither Ms. Proctor nor Ms. Thomas made any objection after having the sleep time and night report requirements explained to them.

As previously stated, confusion is much less likely to result from clear documentation of the terms and conditions of employment. Nonetheless, this case is clear. In light of the plaintiffs' testimony, this court finds that all plaintiffs understood and accepted that sleep time would be uncompensated unless interrupted. None of the Beacon Harbor plaintiffs attempted to document and submit sleep hours worked, while each was fully aware that reported time would be compensated. None of the plaintiffs have alleged that they submitted sleep time interruptions to Life Help that were not paid. The testimony indicates that they are now seeking to be compensated for undocumented time worked. Life Help never had the opportunity to pay the plaintiffs for the claimed time because it was never reported. There is no evidence to support the claims that these hours were actually worked beyond the rough estimations given in trial testimony. Accordingly, judgment is entered in favor of the defendant as to the Beacon Harbor plaintiffs.

An order to this effect shall issue this day.

This the 19th day of February, 2008.

                                            **/s/ MICHAEL P. MILLS**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**
                                            **NORTHERN DISTRICT OF MISSISSIPPI**